# HILLSBOROUGH,

## DECEMBER TERM, A. D. 1849.

---

## THE STATE *v.* THE WILTON RAILROAD CO.

The second section of the charter of the Wilton Railroad Company authorized the company to construct a railroad, "beginning at any point on the Concord Railroad, between Souhegan river and the junction of said Concord Railroad and the Nashua and Lowell Railroad; thence running to Amherst village and through Milford to some point in East Wilton, or at any point on the Nashua and Lowell Railroad in the village of Nashville; thence to some point in East Wilton; thence to Greenfield, or to the centre village of Peterborough, and thence to Marlow; or, beginning at any point on the south line of the State, within one mile of Nissitissett river, thence running to some point in East Wilton, thence to Greenfield or to the centre village of Peterborough, and thence to Marlow as aforesaid."

The company applied to the railroad commissioners, who reported that the public good would be promoted by laying out the railroad upon the following route: "Commencing at the village of East Wilton, thence passing through the village in Milford to Amherst Plain, and thence through the southwesterly part of the town of Merrimack to the depot of the Nashua and Lowell Railroad in Nashville." *Held,* that the report was authorized by the charter;: that any route with one terminus on the Concord Railroad must go to Amherst village, because that was an intermediate bound, but that any route with one terminus in the village of Nashville and the other at East Wilton, having no intermediate bound, might or might not go to the Amherst village.

INFORMATION, in the nature of *quo warranto,* alleging that the Wilton Railroad Company, for the space of six months past, without any grant, warrant or charter, have used the authority and power to construct and finally complete for public use and keep in use a railroad from West Merrimack.

to Danforth's Corner, in Amherst, which liberty, privilege and franchise the company, during all the time aforesaid, have usurped, and still do usurp, upon the government of the State, to the prejudice of the public.

The attorney general prayed that the company may be held to answer to the State by what warrant they claim to hold and exercise the privileges aforesaid.

This proceeding was filed on the twentieth day of July, 1848.

The plea protesting, &c., alleged that the company were incorporated on the twenty-eighth day of December, 1844, with power to construct a railroad, beginning at any point on the Concord Railroad between Souhegan river and the junction of the Concord Railroad with the Nashua and Lowell Railroad, thence running to Amherst village and through Milford to some point in East Wilton, or at any point on the Nashua and Lowell Railroad in the village in Nashville, thence to some point in East Wilton, thence to Greenfield or to the centre village in Peterborough, and thence to Marlow; or, beginning at any point on the south line of this State within one mile of the Nissitisset river, thence running to some point in East Wilton, thence to Marlow as aforesaid; that on the 5th day of April, 1845, the company voted to accept the provisions of the act of December 25, 1844, to render railroad corporations public, as a part of their charter, and filed with the Secretary of State a copy of the record of such vote; that on the 16th of April, 1845, they applied to the railroad commissioners to make a survey of the route of the railroad, and on the tenth day of June, 1845, the commissioners were of opinion that the public good would be promoted by the laying out of the railroad upon the following route: commencing at the village of East Wilton, thence passing through the village in Milford to Amherst Plain, and thence through the south-westerly part of the town of Merrimack to the depot of the Nashua and Lowell Railroad in Nashville; and such pro-

ceedings were had that the governor and council decided that the public good would be promoted by the laying out of the railroad.

The plea then alleged that at different times between the twenty-sixth day of June, 1845, and the time of filing this proceeding, the commissioners, in pursuance of applications made to them by the company, laid out in such different parts thereof as the interest of all concerned therein seemed to require, so much of the railroad as lay between the depot in Nashville and West Merrimack, and made their report to the governor and council, and thereupon the company constructed the parts of the road so laid out, and at the time this proceeding was filed, were engaged in constructing the road, but had not completed nor used it.

The plea then alleged that for the purpose of continuing their railroad from West Merrimack through the southwesterly part of Merrimack, before this proceeding was filed they purchased of the land owners on the route as much land, not exceeding six rods in width, as might be necessary for constructing the road from West Merrimack to Danforth's Corner, and took conveyances thereof, thereby becoming its owners; that the land is within the limits authorized by the charter for the location and construction of the railroad, and is upon the route described by the commissioners, and approved by the governor and council; that they entered upon the land and commenced the necessary work thereon for the construction of the road, and that at the time of filing this proceeding they were carrying on their work without doing any damage to the government or people of this State, but had not then, nor have they now completed any part thereof.

The plea then alleges that by this warrant the company were and are using the privileges aforesaid as they lawfully might do, without this, that they have usurped upon the government of this State any of the privileges aforesaid, as in the information aforesaid it is supposed, and concluded

with a verification, and prayed that the privileges aforesaid might be allowed and adjudged to them.

The second plea, after stating the places where the defendants were authorized to construct a railroad according to the charter and the proceedings under the charter, alleged that the commissioners laid out the railroad upon a route commencing at the village of East Wilton, thence passing through the village in Milford to Amherst Plain, and thence through the southwesterly part of Merrimack to the depot of the Nashua and Lowell Railroad in Nashville, and their report was approved by the governor and council; that the commissioners at various times since the 26th day of June, 1845, laid out so much of the road as lies between the depot aforesaid and West Merrimack, and the company constructed the parts of the road so laid out; that for the purpose of continuing the road from West Merrimack through the southwesterly part of Merrimack, on the route described by the commissioners, the company purchased the land upon the route sufficient to construct the road from West Merrimack to Danforth's Corner, and are the exclusive owners of the land; that on the seventh day of August, 1849, the commissioners laid out the road between West Merrimack and Danforth's Corner, commencing at the northerly end of the road laid out by them before the seventh day of August aforesaid, the whole of which route is within the limits prescribed by the charter.

The third plea alleged that for the purpose of continuing the road from West Merrimack to some point in East Wilton, and thence to Greenfield, or to the centre village of Peterborough, and thence to Marlow, upon and along one of the routes described in the charter, the defendants purchased land necessary for the construction of the road, which land is within the limits prescribed by the charter, and within one of the routes described therein, and the company entered upon the land and commenced the work necessary for the construction of the road from West Merrimack to Dan-

forth's Corner, upon one of the routes described in the charter, and on the seventh day of August, 1849, the commissioners laid out the road according to the application above mentioned, which is the route on which the company were building their road, and is a part of one of the routes described in the charter.

Replication, that the company adopted the act of the twenty-fifth of December, 1844, rendering railroad corporations public in certain cases, as a part of their charter, and applied to the railroad commissioners to survey the route proposed by the company for their railroad, who on the 26th day of June, 1845, reported that the public good would be promoted by laying out a road on the following route, being one of the routes proposed and examined, and within the limits prescribed by the charter, to wit, " commencing at the village of East Wilton, thence passing through the village of Milford to Amherst Plain, and thence through the southwesterly part of the town of Merrimack to the depot of the Nashua and Lowell Railroad in Nashville, the whole distance being about seventeen and a half miles."

That on the 16th day of November, 1846, the company applied to the commissioners to lay out at different and successive times, the railroad as before surveyed and reported upon, and to lay out in the first instance the part lying between the railroad depot in Nashville and passing through the southerly part of Merrimack and the southerly part of Amherst to the town line of Milford, and the commissioners laid out a part of the road in this route, from the passenger depot of the Nashua and Lowell Railroad, in Nashville, to a stake marked " Sta. 51." being about one mile; that on the 13th day of July, 1847, they laid out a part of the road, commencing at the point to which it had been before laid out, at the stake No. 51, and thence to station 262+68, the same being in West Merrimack, and the terminus mentioned in the information, and therein described as West Merrimack, being in distance about four miles; that under the

application for this last mentioned portion of the road, the company requested the commissioners to lay out their road from West Merrimack, where this last portion of the road terminated, to Danforth's Corner, in Amherst, in a route and course different from the route proposed and established, and not in a route or course leading to, or intended by the company to lead to Amherst Plain; that the commissioners, because the proposed road from West Merrimack to Danforth's Corner was not in the route proposed and established, declined to lay it out, and that they were justified in so doing.

The replication then alleges that the company laid out and established a railroad, on the 1st day of January, 1848, from West Merrimack to Danforth's Corner, in connection with the road legally laid out by the commissioners, and from that time have illegally proceeded to construct the same under color of their charter, and have put the road from West Merrimack to Danforth's Corner in operation and use, in connection with the road legally laid out, taking and exacting tolls thereupon; that the road from West Merrimack to Danforth's Corner, is not in the route proposed, reported upon and established, and does not lead to Amherst Plain, and is not intended by the company to lead through Amherst Plain, to Milford village and East Wilton, and has never been legally established as a part of any route; and concludes with a verification.

The rejoinder, after setting out the routes mentioned in the charter, alleges that they are separate and distinct routes, commencing at separate and distinct points, far asunder, and running over different and distinct grounds, but converging to one common point at East Wilton; that the company were authorized to select one, and one only, of these routes, and to construct a railroad upon one only of them, and not upon any two, or the parts of any two of them; that, on the 16th day of April, 1845, the company applied to the commissioners to survey the routes described

in their charter, alleging that they were authorized to construct a railroad beginning at any point on the Concord Railroad, between Souhegan river and the junction of the Concord Railroad and the Nashua and Lowell Railroad, thence running to Amherst village, and through Milford, to some point in East Wilton; or at any point on the Nashua and Lowell Railroad, in the village of Nashville, thence to some point in East Wilton, thence to Greenfield or the centre village in Peterborough, and thence to Marlow; *or* beginning at any point on the south line of the State, within one mile of the Nissitisset river, thence running to some point in East Wilton, thence to Greenfield or the centre village in Peterborough, and thence to Marlow, as aforesaid; that the opinion of the commissioners was, that the public good would be promoted by laying out a road upon one of the routes proposed by the company, which route was the one described in the charter as beginning at any point on the Nashua and Lowell Railroad, in the village of Nashville, thence to some point in East Wilton, and the commissioners reported accordingly, and the governor and council approved their report.

The rejoinder then alleges that the other route mentioned in the replication, and supposed to have been proposed by the company, and reported upon by the commissioners, to wit, " *or* to Amherst Plain, and thence through the southwesterly part of the town of Merrimack," was not prescribed by the charter, nor proposed by the corporation, nor could the commissioners legally report upon it, but is a route different from any of those described in the charter, and upon which the company are not authorized to construct a railroad. Nor is any thing in the report of the commissioners touching any route from Amherst Plain through the southwesterly part of the town of Merrimack, if any such thing there be therein, obligatory upon the corporation, to restrain them from building their road from West Merrimack to Danforth's Corner, nor did they become bound to construct their

road as is supposed in the replication; that they were au-
thorized to construct their railroad upon either of the routes
described in the charter, as they might elect, and that they
elected the route described in the charter as beginning at a
" point on the Nashua and Lowell Railroad, in the village
of Nashville, thence to a point in the village of East Wil-
ton," and constructed their road accordingly, and that the
part of the road mentioned in the information, and sup-
posed to be constructing from West Merrimack to Dan-
forth's Corner, is part of the route described in the charter
and selected by the company; that the route described in
the charter as beginning at any point on the Concord Rail-
road, between the Souhegan river and the junction of the
Concord railroad and the Nashua and Lowell Railroad,
thence running to Amherst village, and through Milford, to
some point in East Wilton, is the only route described in
the charter, upon which they were authorized to construct
a railroad " to Amherst village," (which is the same place
as Amherst Plain,) and which is the route not selected by
the company, nor surveyed by the commissioners, and the
route mentioned in the charter as beginning at a point on
the Nashua and Lowell Railroad, in the village of Nash-
ville, thence running to some point in East Wilton, is the
route selected by the company, and surveyed by the com-
missioners, and is the same which passes from West Merri-
mack to and through Danforth's Corner, on which the com-
pany are constructing their road, and the same does not
pass from West Merrimack to and through Amherst Plain,
nor through Amherst Plain to Milford, nor is Amherst Plain
within the route from the Nashua and Lowell Railroad to
East Wilton.

The rejoinder then alleges that before the filing of the in-
formation, the company purchased all the land for their road,
on the route from West Merrimack to Danforth's Corner,
which land is within the limits prescribed by the charter,
and within the route described, as beginning at any point

on the Nashua and Lowell Railroad, in the village of Nashville, thence to some point in East Wilton, and within the route selected by the corporation, and upon the land thus purchased, and that they are now constructing their railroad upon said land, for the public use, from West Merrimack to Danforth's Corner, as they lawfully may do, without this, that they have usurped any privileges upon the government of this State, as by the information is alleged; and concludes with a verification.

To this rejoinder the State demurred, alleging, first, that it was argumentative, because, instead of a positive averment that the route described in the replication as surveyed by the commissioners is not within the limits of the charter, it sets out the limits of the road as granted by the charter, and by way of argument and legal construction, seeks to draw a conclusion that the route is not within the limits of the charter, whereas nothing appears in the charter, or the proceedings under it, showing that the route is not within the limits of the charter, but whether it is within such limits is a matter of fact to be shown by evidence.

2. Because, instead of a positive denial that the route, alleged in the replication to have been surveyed by the commissioners, and proposed to them by the company, evasively, and by way of argument, it sets out the written application to the commissioners, containing a description of the limits of their grant, and thence seeks to draw the conclusion that no other route was proposed by the company, except a description of the general routes granted by the charter, as stated in the application.

3. Because it does not positively deny that the commissioners surveyed the route described in the replication, but evasively, and by way of reference to the application and the charter.

4. Because it does not positively deny that the report of the commissioners describes the route by them surveyed, as

alleged in the replication, but evasively, and by way of argument.

5. Because it does not positively aver that the road, from West Merrimack to Danforth's Corner, is in the route surveyed by the commissioners, but by way of argument and evasively.

6. Because it does not deny that the commissioners made their report to the governor and council of the tenor and effect alleged, by reference to the record, or in any manner capable of traverse, but evasively, and by way of argument.

The demurrer also alleged that the rejoinder was double.

1. Because it avers that the route alleged in the replication as surveyed by the commissioners, is not within the charter, and a route that the company had no right to build, and also alleges that the commissioners did not survey the same route.

2. Because it alleges that the company did not propose the said route, and also that the commissioners did not report upon it.

3. Because it avers that the company are not bound by the report of the commissioners, because the route is not within the charter, and also avers that the commissioners did not report upon it.

4. Because it avers that the company proposed, and the commissioners reported on, the route in which the company have built their road, from West Merrimack to Danforth's Corner, and also avers that the doings of the commissioners are insufficient to establish the road in the route described in the replication, because it is not within the limits of the charter.

5. Because, there being no legal denial that the commissioners made their report, which was approved by the governor and council, the rejoinder legally confesses that the public good requires a road in a route described as follows in the report:

" Commencing at the village of East Wilton, thence pass-

ing through the village of Milford, to Amherst Plain, thence through the southwesterly part of the town of Merrimack, to the depot of the Nashua and Lowell Railroad, in Nashville."

Yet the rejoinder avers that though the route from West Merrimack to Danforth's Corner leads, or is intended to lead, to or through Amherst Plain, or that the road from West Merrimack to Danforth's Corner, is in the route so described in the report.

*Sullivan*, attorney general, (with whom was *Perley*,) for the State.

*Gove*, for the respondents.

GILCHRIST, C. J.   We may pass over for the present any questions relating merely to the forms of the pleadings, and their technical accuracy.   A material question in the case is whether the report of the commissioners was authorized by the charter.

The application to the commissioners states that the corporation are unable to buy the land on either of the routes, and prays them to survey the routes and make a report.   It is material to determine whether the rejoinder be a substantial answer to the replication, and for this purpose it is necessary to examine the charter.

The second section authorizes the corportion to construct a railroad on either of two routes, or any portion thereof. The first route is described as follows :

" Beginning at any point on the Concord Railroad, between Souhegan river and the junction of said Concord Railroad and the Nashua and Lowell Railroad, thence running to Amherst village, through Milford, to some point in East Wilton, or at any point on the Nashua and Lowell Railroad, in the village of Nashville, thence to some point in East Wilton, thence to Greenfield, or to the centre village of Peterborough, and thence to Marlow."

The other route is described as follows :

" Or beginning at any point on the south line of the State, within one mile of Nissitisset river, thence running to some point in East Wilton, thence to Greenfield, or to the centre village of Peterborough, and thence to Marlow, as aforesaid."

The first route requires the road to go to Amherst village. This is an intermediate bound, which must be regarded. About this there can be no doubt.

Upon the second route there is no intermediate bound until we reach East Wilton.

What course then may a route take, beginning at some point on the Nashua and Lowell Railroad, in the village of Nashville, and thence running to East Wilton ?

It may be well to inquire what are the powers of the railroad commissioners.

By the fourth section of the act of December 25th, 1844, they are to make a survey of the route proposed by the corporation, which shall be within the limits prescribed by the charter. If their opinion be that the public good would be promoted by laying out the proposed road, they are to make a report of their decision to the governor and council, which report shall contain a description of the route surveyed. If the decision of the governor and council is in favor of laying out the road, the commissioners are to proceed to lay out the road surveyed.

The commissioners have made a report in favor of laying out the road, and the question recurs whether it is within the limits prescribed by the charter.

The corporation say it is not within the charter, for the following reasons :

1. The routes are entirely distinct, the southerly terminus of each being different from the other.

2. Therefore, it is the intention of the act that one *or* the other of these routes should be adopted as it stands.

3. A new route, which is neither of the routes specified,

but which is composed partly of one and partly of the other, cannot be adopted.

4. The route surveyed by the commissioners has the termini of the second route, and the intermediate bound of the first route.

On careful examination of the charter, the opinion of the court is, that any route, with one terminus on the Concord railroad, must go to Amherst village, because that is an intermediate bound. But that that any route, with one terminus in the village of Nashville and the other at East Wilton, having no intermediate bound, may or may not go to Amherst village. Why such a limitation was imposed, is not for the court to inquire. Our duty is only to ascertain what the second section of the charter means, and the question may be asked what there is in the charter to hinder the second route from going to Amherst village. It is only the fact that the first route *must* go there, but that does not prove that the second route may not go there. If the charter did not mean that the second route should go to Amherst village, it would have been easy to exclude that conclusion, by a very few words. There is nothing in the charter which shows that the legislature meant to give the commissioners merely the power to determine which of these routes the public good required, taking them literally as they stand. Suppose they had reported in favor of the second route described in the second section of the charter, without other words of description than those used in the charter, where ought the road to be laid out? The corporation say that it ought to be laid out in as direct a line as may be, having regard to the feasibility of the ground. But the route which comprehends Amherst village may cover the most feasible ground, and if so, it is there that the corporation ought to make the road. But it is said that Amherst village must be disregarded, because it is mentioned in the first route. Then, by a parity of reasoning, Milford must be excluded, because that is also mentioned in the first

route, and there is nothing in the charter to show why that should not be done. The second route, then, upon this reasoning, must be so contrived that it shall not pass through Milford, for we must avoid all the intermediate points mentioned in the first route, a result which probably the corporation would not desire to reach.

The judgment of the court is, that the report of the commissioners is authorized by the charter. It therefore stands as a valid proceeding in the cause.

The demurrer raises both questions of substance and questions of form. The rejoinder makes no substantial answer to the replication, and upon the demurrer there must be

*Judgment for the State.*